## LIVINGSTON *v.* PENDERGAST & al.

The sale, by the administrator of a solvent estate, of the land of his intestate under a license from the court of probate, gives no title or color of title to the purchaser, unless it be accompanied by a deed of conveyance from the administrator.

Evidence that the administrator entered into the possession of the land upon a sale under his license, at which the land was struck off to himself, that he considered himself the owner, had the land surveyed and the lines around it marked, let a neighbor mow over a part of it, and cut three or four pine timber trees upon it, during an occupation of about three years, is not evidence of that open, notorious and exclusive possession, marked by definite boundaries, which is necessary to render it adverse to the title of the legal owner.

A widow, who, having right of dower in the land of her deceased husband, continues to live upon it with her infant children, the heirs at law, or enters and takes possession after his decease, and lives upon it with the infant heirs, is presumed to hold the possession for her own benefit in reference to her dower only, and for the infant heirs as their natural guardian.

If the widow contracts a second marriage, the joint possession of herself and husband, while the infants continue to live with them upon the land, is presumed to be for the same purposes as if she had continued sole — if her second husband claims no other rights in the land than such as he may be entitled to exercise in the right of his wife, by virtue of the marriage; and such possession by the mother, while sole, or by the husband and wife, after the second marriage, can never be adverse to the title of the infant heirs, whatever may be the circumstances attending the possession, unless they amount to an actual ouster of the heirs, and in fact exclude them from the land.

The administrator of an estate administered as solvent, at the sale under his license bid off the land himself, entered upon and kept possession of it about three years, without deed or writing, except a memorandum of the sale, signed by the auctioneer, considering himself the owner, and exercising acts of ownership. By agreement between himself, the legal guardian of the heirs,

and the widow, their mother, with the consent of her husband, she having contracted a second marriage, the administrator, by a deed in his private capacity and not as administrator, conveyed the land to the infant heirs, in consideration of the indebtedness of the estate to the mother, for the support of the infant children under seven years of age, and of a sum which had been agreed to be paid to her by the administrator, with the consent of the legal guardian in lieu of dower;—it being intended and understood that the deed given to the infants should be for the use of the mother, and that the land should belong to her. The mother and her husband, with the infant heirs, as part of their family, entered after the conveyance from the administrator, occupied the land, claiming it as hers, built a house upon it, and exercised ownership during the life of the husband, and the widow subsequently during the minority of the heirs. — *Held*, that the deed from the administrator was to be considered as confirming the title of the heirs, and not as adverse to it, and that the mother could not be permitted to set up her supposed equitable title under it as *cestui que trust*, as color of title, to qualify the possession so as to render it adverse to the title of the infants as heirs at law.

TRESPASS, *quare clausum*, commenced January 10, 1855. Plea, the general issue, with a brief statement of title in the defendant, Isaac Pendergast, to two thirds of the premises, and that the other defendant, John Pendergast, acted as his servant in doing the acts charged. To prove title, the plaintiff, Sally Livingston, offered evidence that for many years before the alleged trespass she occupied the premises, claiming title and exercising ownership, and that the defendants entered and cut, and carried away wood about the first of January, 1855.

The defendants then introduced evidence that one John Libby occupied the premises under a valid title, from 1818 to the time of his death, in March, 1823 ; that he died in possession, leaving the plaintiff, his widow, and three children, all under eight years of age, to wit : Livonia, Richard and Abigail P. ; that Abigail was born January 7, 1816 ; Richard, November 14, 1818, and Livonia, May 16, 1822 ; and that Abigail and her husband, John T. May, conveyed her interest in the premises to the defendant, Isaac, by deed dated July 20, 1849 ; and Livonia and her husband, Gilman Merrill, her interest by deed dated August 29, 1854.

To rebut this evidence the plaintiff proposed to prove title by adverse possession, and offered in evidence the following facts :

Said John Libby died in possession of the premises, consisting of fifteen acres, and of other land, in all about forty-five acres. His widow, the plaintiff, with her three minor children, remained on the land from his death, in 1823, until 1826, without any administration on his estate. On the fourth of March, 1826, Josiah B. Shackford was appointed his administrator, and about the same time William Walker guardian of the children. The administrator obtained license from the court of probate to sell enough of the real estate to raise $130, and it was agreed between the widow, the administrator, and guardian, that the whole land should be sold, and that the widow should have $100 out of the proceeds in lieu of her dower in the land. On the fifteenth of September, 1827, the land was sold at auction in four parcels, of which the guardian bid off three, amounting to $164, and the administrator himself bid off the fourth parcel, which is the fifteen acres in controversy, for the sum of $64. Immediately after the sale the administrator entered upon the premises so bid off by him, without any deed or other writing than a memorandum of the sales, signed by Walker, the guardian, who acted as auctioneer, and occupied until September 22, 1830. The facts offered to be proved to show said Shackford's possession, were, that he took possession of the premises, considering himself to be the owner ; that he let a neighbor mow a part of them ; had the land surveyed, and the lines marked around it, and that he cut three or four white pine timber trees upon it. There was no house upon the fifteen acres, and but about an acre and a half cleared.

The facts offered in evidence to show the plaintiff's possession to be adverse, were, that in May, 1830, it was agreed between herself and her then husband, Livingston, (she having contracted a second marriage,) Shackford, the administrator, and Walker, the guardian, that the estate of Libby was indebted to her in about the sum of $221, mostly for the support of the minor children under the age of seven years, and that the $100 agreed to be paid to her in lieu of dower, remained unpaid ; that she should receive, in part payment of these sums, the land which Shackford had bid off, and a balance of $84 in the hands of the

administrator, he having made no settlement in the court of probate of his administration account; that in pursuance of this agreement, Shackford, on the twenty-second of September, 1830, executed in his own name, and not as administrator, a deed of the *locus in quo* — the fifteen acres — to the three infant children, and delivered it to the plaintiff, who has ever since retained it in her possession; that no other consideration was paid for said deed, except as above stated; that Livingston, the husband, made no claim for what was due his wife from the estate, nor for the $100 agreed to be paid in lieu of dower; that it was understood and intended by all the parties, that the plaintiff, and not the children, should have the land; that at the time the deed was executed the plaintiff and her then husband were occupying a house on another part of the Libby farm; that soon after the deed was executed, she and her husband built a small house upon the fifteen acres, and removed to it, where they lived together till he died, about three or four years after; that she has ever since occupied the premises, claiming in her own right to own them, and exercising all the authority of an owner; that during the lifetime of her husband, Livingston, after the execution of the deed, they occupied claiming the title to be in her, and treating the estate as her's, and that the three Libby children lived and made their home with her on the premises during the time she thus occupied, till they attained majority.

The court ruled that the evidence thus offered was not competent to be submitted to the jury to prove Shackford's possession, or the possession of the plaintiff to be adverse to the title of the children, and directed a nonsuit to be entered; to which the plaintiff excepted.

*H. A. Bellows*, for the plaintiff.

The evidence shows an occupation by the plaintiff, either alone or in connection with her husband, Livingston, from September 22, 1830, to the time of committing the trespass.

If this was adverse, the nonsuit must be set aside. The actual possession is clear from the date of the deed. She and

her husband occupied, claiming the title in her right till his death, and, after she continued to occupy, claiming it as her own.

It is immaterial whether Shackford's deed conveyed the land to the plaintiff or not, as the possession under a claim of title is clear. She claimed it to be a conveyance to her, and the jury might properly find her possession to have been adverse, notwithstanding the deed was to the children.

The presumption that she occupied as natural guardian of the children is rebutted by the facts stated, and the jury might so find it. *Atherton* v. *Johnson*, 2 N. H. 31.

The case finds that it was understood and intended that the land should be hers, and the building of the house tends to show that. But we go farther, and contend that under the circumstances of the case a trust resulted to the plaintiff, she having paid the entire consideration. The jury must have found that the consideration was so paid to her, and that the conveyance was for her benefit, and not by way of advancement to the children.

A resulting trust may be raised or rebutted by parol evidence, and the children may be trustees. *Page* v. *Page*, 8 N. H. 187 ; *Pembroke* v. *Allenstown*, 1 Foster 107.

Should it be said that the husband and wife were jointly seized, and that the trust resulted to him jointly with his wife, we reply that the case finds that the funds belonged to the wife, that the price was paid by her, and the possession claimed to be in her right. Under these circumstances, the land belongs to the wife. *Coffin* v. *Morrill*, 2 Foster 352. Besides, if they were jointly seized they are to be regarded as one person, and she takes the whole by survivorship. Greenl. Cruise, book 2, tit. 18, ch. 1, secs. 44, 50.

The possession of the plaintiff was notice to the defendant of her claim by virtue of the resulting trust. *Haddock* v. *Wilmarth*, 5 N. H. 181 ; *Colby* v. *Kenniston*, 4 N. H. 262 ; *Rogers* v. *Jones*, 8 N. H. 264 ; *Bailey* v. *Carlton*, 12 N. H. 16.

The possession of Shackford from the time of his conveyance to the children was adverse. He had bid it off at the sale, and

a record was made of it, and it is not material that there was no valid sale or conveyance. Shackford claimed it as his, entered upon it as owner, cut timber, surveyed and marked the lines, and cultivated part of it, and all this under a claim of ownership. The jury might on this have found the possession adverse. *Wendell & al.* v. *Moulton*, 6 Foster 41.

*G. W. Morrison*, for the defendants.

SAWYER, J. By the laws in force at the time of the sale by Shackford, as administrator, under the license from the court of probate, the authority given by the license in the case of insolvent as well as solvent estates, was a mere naked power to sell, unaccompanied by any interest. Upon the death of the ancestor, intestate, the estate at once vested in his heirs, subject to be divested by a legal sale under the license, and a deed in pursuance of the sale from the administrator, executed and delivered in due form of law. Act of July 2, 1822; Laws of 1830, p. 366; *Bean* v. *Moulton*, 5 N. H. 450; *Bergin* v. *McFarland*, 6 Foster 533. In reference to the lands of an insolvent estate, the law upon this subject was materially modified by the act of January 2, 1829, Laws of 1830, p. 370, giving to the administrator the rents and profits of the real estate, and requiring him to account upon the settlement of his administration for the net proceeds, after deducting the expenses of keeping the estate in repair. The effect of this statute was held, in *Bergin* v. *McFarland*, to be to give to the administrators of insolvent estates a special and limited estate in the lands of their intestates, which continues until terminated by a valid sale under license, or until the close of administration upon the estates, if no sale should be necessary. The statute in terms is limited to insolvent estates. It was passed subsequent to the proceedings in this case, in reference to the sale of the *locus in quo*, and consequently has no application here. By the first section of the act of 1822, under which the proceedings were had in this case, the judge of probate is empowered to license and authorize the administrator

to sell the real estate at public auction. It then provides that upon the sale the administrator " may and shall execute and deliver, in due form of law, a good and valid conveyance of the estate sold to the purchaser, being the highest bidder, his heirs and assigns." That no title to the estate passes under the sale unless it is followed by the execution and delivery of such deed of conveyance, is too clear to admit of question. The naked power which the administrator has to divest the legal title of the heirs, can be exercised only in the mode prescribed by the statute ; and a deed, such as the statute declares shall be given, is essential to the due execution of the power. The entry and possession of Shackford, then, from September, 1827, to September, 1830, were without title, and without any color of title. *Remick* v. *Butterfield*, 11 Foster 70. The facts offered to be proved in relation to the character of his possession would fail to show that definite, notorious and exclusive possession necessary to render it adverse to the title of the legal owners. *Smith* v. *Hosmer*, 7 N. H. 436 ; *Hale* v. *Glidden*, 10 N. H. 397 ; *Wendell* v. *Foster*, 6 Foster 41. In order to constitute an adverse possession, sufficient to countervail the legal title, the evidence must tend to show that it was open, notorious, and exclusive, and so marked by definite boundaries as to indicate, by clear and unequivocal acts, the exercise of ownership up to defined and visible boundaries, to the exclusion of the legal owner ; thus giving him unequivocal notice of an adverse claim. *Bailey* v. *Carlton*, 12 N. H. 9. The facts offered in evidence fall short of the character required to render them evidence of such adverse claim. The act of the administrator in causing the lot to be surveyed and its boundaries marked, is equivocal. It may properly be referred to his proceedings as administrator, in connection with a sale under his license, and the other acts are too vague and loose in their character to constitute evidence of possession adverse to the title of the heirs.

The question, however, whether Shackford's possession was adverse, probably becomes immaterial in this case, upon the views entertained by the court upon the other point as to the character

Livingston v. Pendergast.

of the plaintiff's possession from September, 1830, until her minor children attained majority.

We regard it as a well established principle, and of great practical importance, that when the widow, upon the death of her husband, having right of dower, continues with her minor children in possession of his real estate; or, subsequently to his decease, enters into the possession with the minor children, they being the heirs at law, her entry and possession are in law to be considered as made and taken for her and their benefit; for herself, in reference to her rights of dower only; and for her children, the heirs at law, as their natural guardian. Whatever may be the circumstances attending her possession, unless they are such as to amount to an ouster in fact, of the minor heirs — to an actual exclusion of them from the possession — sound policy requires that she should not be permitted to claim that her possession, while they continued to remain with her, as members of her family and under her control, upon the land, was adverse to their title.

The nurture and tutelage of the infant children devolve upon her. This duty in many cases she can satisfactorily fulfill only by occupying the estate, living with them upon it, and managing it for their common benefit. Probably, in a majority of cases, partition of the estate among the infant heirs, and a several occupancy by their legal guardians, would be prejudicial to their interests, and in many cases would result in disabling her from maintaining a home for herself and them. To compel the legal guardians, for the protection of the rights of their wards, to resort to legal proceedings against her, whenever her possession was assuming what, as between strangers, would be an adverse character, would tend directly to these results. A wise policy, and one more consonant to the received doctrine in other cases of trust and confidence, would certainly be to protect their rights in the other mode, by holding that in the confidential relations which she sustains to her infant children, as their guardian by nature, when she takes possession of their estate she is not to be

permitted to set up any claim of right in herself, or colorable title to herself, in conflict with theirs.

Upon her contracting a second marriage, the husband being in possession jointly with her and the heirs, with no other rights and under no other claim of right than such as he may acquire by the marriage, it must be held that their joint possession is of the same character as hers would have been if she had continued sole, and that he is in possession jointly with them in the right of the wife, to carry out the purposes and objects to be subserved by the possession of the wife as the natural guardian.

Upon these views, if the deed from Shackford had been given directly to the plaintiff instead of being taken in the name of the infants for her use, it could not be permitted to qualify her possession, or the joint possession of herself and husband, so as to give it an adverse character. It is unnecessary for the decision of this case to carry the doctrine to that extent, for upon other grounds the deed of Shackford to the infant heirs, and the claim of the plaintiff under it as *cestui que trust,* cannot be held thus to qualify the possession, even if the deed given directly to the plaintiff would have that effect.

The deed from Shackford was to the heirs — the legal owners of the estate. It may be conceded that the facts offered in evidence were sufficient for a jury to find upon them that if Shackford at the time of executing the deed had been the owner of the estate, a trust would have resulted to the plaintiff. As a title, the deed conveyed nothing, for the grantor had nothing to convey; consequently no equitable title in fact resulted. But viewing the deed as color of title, to whom did it give color? Clearly to the children, to whom it purported to convey the title. As the trust, if one had arisen, is one resulting by implication or operation of law, it would have remained unexecuted by the statute of uses; Greenl. Cruise, tit. XII, ch. 1, sec. 40 ; and the legal title, vesting in them at the delivery of the deed, upon the supposition that Shackford was the owner, still remains in them under it, with the equitable title in the plaintiff as *cestui que trust.* This equitable title is founded upon and arises from the

legal estate, and the *cestui que trust*, when in possession, holds only as the tenant at will of the ·trustee. Greenl. Cruise, tit. XII, ch. 1, sec. 3. The possession of the plaintiff, then, if to be referred only to the ostensible title under Shackford's deed, is the possession of the children, and not adverse to their title under that deed. The claim of a trust resulting upon the conveyance of the legal title, constitutes a recognition of that title in the trustee, and can never be adverse to it. *Keene* v. *Dearborne*, 8 East 248 ; *Tenney* v. *Jones*, 10 Bing. 75, and numerous American authorities collected in Greenl. Cruise, tit. XII, ch. 2, secs. 38, 41, notes.

That there are cases in which, after a long continued possession by the *cestui que trust*, the presumption of a conveyance of the legal title may be made, is well settled. This can be only when a conveyance ought in equity to have been made, and the possession has continued so long after the purposes of the trust have been fulfilled, and has been of such character that in other cases it would amount to title, by adverse possession. *Armstrong* v. *Pierce*, 3 Burr. 1901 ; *Doe* v. *Brightmen*, 10 East 583 ; Notes to Greenl. Cruise, *qua supra*. The doctrine can have no application in this case, to give color of title to the plaintiff under such a presumed conveyance, because the trustees, if they held the legal title only under the deed of Shackford, being infants, could not be supposed to have released until their majority ; and because, having the legal title as heirs at law as well as under Shackford's deed, there is no ground for holding in equity that they ought to have conveyed.

The case, then, as presented on the part of the plaintiff, is that she is colorably *cestui que trust* under the deed from Shackford, purporting to convey the title to the infant heirs, and has been in possession for more than twenty years as *cestui que trust*, claiming the title to be in them under that deed, for her use, and referring her possession wholly to the equitable estate under the deed ; and she now claims that this possession is to be qualified by the color of title to the heirs which the deed furnishes as adverse to the true title of the heirs.

We think this view cannot be sustained. The possession, so far as it is qualified at all by color of title, is made consistent with title in the heirs, for it recognizes such title, and was expressly asserted to be taken and held under it. The deed of Shackford to the heirs must be held to be in confirmation of their title, instead of adverse to it. Upon the face of the deed, and by the record, if spread upon the records, the title would be shown to be in the same persons in whom the true legal title existed. With that confirmation, the heirs themselves and their legal guardians might well rest content. It could import no notice to them of a claim adverse to or inconsistent with their title as heirs at law. The possession which followed it would not acquire notoriety from it, as of an adverse character, because of any color of title which it gave to her against them. On the other hand, her possession, whether referable to her claim as *cestui que trust*, or to her relation to the heirs, as guardian by nature, would be alike under a title admittedly in them, and her declarations and assertions of right and title in herself could have no greater effect in giving an adverse character to the possession, while that possession did not in fact exclude them from occupation with her, than if made without such deed to them.

The infant heirs, from the time the plaintiff and her husband went into possession, in 1830, occupied with her, having all the possession in connection with and under the care of their natural guardian, which ordinarily accompany the title during the minority of the owner. Being infants, living on the premises with their natural guardian, the management of the estate would properly devolve upon her until the guardian, by appointment of law, saw occasion to interfere for the protection of the rights of his wards. It could not be supposed that occasion had arisen, because the natural guardian, while they were thus living upon and occupying the land with her, exercised acts of ownership not amounting to an exclusion of them from it, nor because she asserted a right to it in herself under a deed which went directly to confirm the legal title in them, and added to their title by descent an additional title by grant. It would be attended with

Livingston *v.* Pendergast.

mischievous results, if, under such circumstances, the exercise of ownership by the mother, and her assertions and declarations of right and title in herself, should be permitted to give to her possession a character adverse to the title of her children as heirs at law.

The facts offered in evidence were insufficient to prove adverse possession by the plaintiff, and they were properly excluded.

*Judgment on the nonsuit.*